1

2

3

4

5

6                       UNITED STATES DISTRICT COURT

7                            DISTRICT OF NEVADA

8                                  * * *

9    CLIFFORD MCCLAIN,                        Case No. 2:17-cv-00753-RFB-NJK

10                                Petitioner,   **Order Denying Petition for a Writ of**
                                               **Habeas Corpus and Denying a Certificate**
11       v.                                            **of Appealability**

     JEREMY BEAN,[1] *et al.*,
12
                                  Respondents.
13
                 Clifford McClain's third-amended 28 U.S.C. § 2254 habeas corpus petition is before the
14
     Court for final adjudication on the merits. ECF No. 48. As discussed below, the petition is denied.
15

16   **I.       BACKGROUND & PROCEDURAL HISTORY**

17              In January 2009, after an eight-day trial, a jury convicted McClain of first-degree murder

18   and two counts of battery constituting domestic violence for the murder of his estranged wife,

19   Allaina. Exhibit 74.[2] The state district court sentenced him to a term of 20 years to life in prison.

20   See Exh. 80.[3] Judgment of conviction was entered on April 20, 2009. Exh. 84. The Nevada

21   Supreme Court affirmed McClain's convictions in December 2011 and affirmed the denial of his

22   state postconviction habeas corpus petition in February 2017. Exhs. 116, 182.

23

24

25   _____

26   [1] According to the state corrections department's inmate locator page, McClain is incarcerated at High Desert State
     Prison. The department's website lists only the following associate wardens: Jeremy Bean, Ronald Oliver, Julie
     Williams, and James Scally as the wardens for that facility. At the end of this order, the Court directs the Clerk of
27   Court to substitute the first associate warden listed, Jeremy Bean, for prior respondent Brian Williams, under, *inter
     alia*, Rule 25(d) of the Federal Rules of Civil Procedure.
28   [2] Exhibits to Respondents' first motion to dismiss, ECF No. 11, are found at ECF Nos. 12-17.
     [3] McClain was sentenced based on a stipulation by the parties; the domestic battery counts were dismissed.

McClain dispatched his federal habeas petition for filing about March 12, 2017. ECF No. 1-1. This Court ultimately granted McClain's motion for appointment of counsel and petitioner filed a counseled, third-amended petition. ECF Nos. 39, 48. Respondents have now answered the remaining claims. ECF No. 77. McClain filed a reply. ECF No. 89.

## II.    LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405–06 (2000), and citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75 (quoting Williams, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly

established law must be objectively unreasonable." Id. (quoting Williams, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, 538 U.S. at 75); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and as a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

To the extent that the petitioner challenges the state court's factual findings, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. See, e.g., Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. Id. The governing standard is not satisfied by a mere showing that the state court finding was "clearly erroneous." Id. at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004); see also Lambert, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Cullen, 563 U.S. at 181.

///

///

///

3

III.    DISCUSSION

### A.  Trial Testimony by McClain, His Mother, and Medical Examiners

McClain's mother, Melody Nelson testified that she returned to Las Vegas from a week-long trip with her two grandchildren, McClain and Allainna's children, on the night in question February 17, 2008. Exh. 66 at 44-95; Exh. 71 at 145-168. Her friend who had accompanied her on the trip took the kids to Nelson's brother's house, as had been pre-arranged, because McClain and Allainna exchanged the children through an intermediary. Nelson opened her garage door and found Allainna stretched out on the ground. Nelson shook Allaina and called out, but Allainna was unresponsive. Nelson ran inside the house and found McClain curled up on the couch with his head down on his arms. She asked him what had happened to Allainna; he did not answer. She ran back into the garage but could not rouse Allainna, so she called 911. Nelson did not expect Allainna to be there because Allainna was "banned" from being at the house when McClain was there. Exh. 66 at 73.

The medical examiner testified that the evidence showed that Allainna suffered blunt force trauma to her face and head and asphyxia consistent with strangulation. Exh. 69 at 34-77. The defense called a forensic pathologist who testified that he could not conclude the cause of death was asphyxia due to neck compression to a reasonable degree of medical probability. Id. at 78-144. He was also unable to rule out the possibility of strangulation. Id. at 113.

McClain testified that numerous incidents of domestic violence occurred throughout his marriage to Allainna. Exh. 4 at 47-158.[4] He recalled a time when Allainna grabbed his phone and hung up on the person to whom he was talking. He asked her to stop being such a bitch, and she punched him in the face. Id. at 49. Another time he and Allainna were at his mother's house with their two children. Their son, who was about three, ran up and slapped Allainna on the leg. She turned and kicked him in the back; he fell and hit his face against the wall. Id. at 83-84.

McClain testified that, on the night of her death, Allainna showed up at his mother's house. He was dog-sitting for his mom and was watching basketball in the garage. Allainna was very upset

---

[4] Exhibit 4 is an exhibit to petitioner's third-amended petition and is found at ECF No. 49-4.

and told McClain, "I'll fucking kill you," while she reached for a knife that was on a desk near McClain. Id. at 99. McClain pushed her away, but she pushed back, repeating that she would kill him and reaching toward the knife. He pushed her and told her to "get the fuck out." Id. at 101. She lunged at him. He grabbed her neck and pushed her away. Allainna tried to get past McClain to the desk, and he grabbed her by the neck again. Their feet got tangled, and they fell. McClain heard Allainna's head hit the car that was parked in the garage and then hit the floor. Allainna was still; McClain shook her, but she didn't move. McClain said he wasn't trying to hurt or kill Allainna, just trying to get her to stop. McClain doesn't remember anything after that.

### B.    Claims Rejected on Direct Appeal

McClain argued on appeal that several witnesses' hearsay statements were admitted in error and that testimony about Allainna's past violent actions was improperly excluded. He also challenged several jury instructions.

#### i.    Ground I(A)(1)

McClain contends that the trial court permitted the State to elicit substantial hearsay from Sharon Langford, Richard Trujillo and Brandy DiPietro.

Allainna's mother, Sharon Langford, testified that Allainna called her a few days before her death on February 12, 2008. Exh. 69 at 178-189. Allainna was upset and talking very fast. Allainna told her McClain had just called her and was swearing at her and threatening her because he had found out that she was going to file for sole custody of their two children. The court permitted the hearsay testimony on the basis that it was an excited utterance.

The Nevada Supreme Court agreed with McClain that Ms. Langford's testimony was improperly admitted, but concluded that the admission was harmless error:

> McClain contends that the district court abused its discretion in admitting, over his objection, hearsay statements introduced at trial through Sharon Langford, Allainna's mother. Specifically, he asserts that Langford should not have been permitted to testify that, during a phone conversation a few days before her death, Allainna said that McClain called and threatened her because he had discovered that she was going to file for sole custody of their children.
>
> Allainna's statement was made out of court and was offered for its truth, specifically, to show that McClain had indeed threatened Allainna during a phone

> conversation. Although the State asserts that Allainna's hearsay statements fall within the excited utterance exception, we disagree because the State did not show that Allainna made the statements while under the stress of a startling event. Thus, the district court abused its discretion in admitting Langford's hearsay testimony.
>
> Nonetheless, while we agree with McClain that this testimony was improperly admitted, we conclude that its admission constituted harmless error. See Weber v. State, 121 Nev. 554, 579, 119 P.3d 107, 124 (2005) (improperly admitted hearsay evidence is subject to harmless error review). First, the jury had already learned, through properly admitted evidence, that McClain was often abusive and threatening toward Allainna. Next, there was overwhelming evidence of McClain's guilt, including testimony that Allainna was strangled to death, which completely undermined McClain's self-defense theory. We are certain that even if Langford's hearsay testimony had been excluded, the verdict would have been the same. Therefore, we conclude that this error was harmless beyond a reasonable doubt.

Exh. 116 at 5-6.

Next, Richard Trujillo testified that he had worked with Allainna. Exh. 69 at 189-215. In April 2003, Trujillo pulled into the parking lot at work about 5 a.m., and Allainna drove in behind him. Trujillo knew McClain and saw him in a parked car; he was in the passenger seat with a sleeping bag over him. McClain went over to Allainna's car. Trujillo went inside and got a co-worker, Thomas Park. They came back outside, and McClain was on top of Allainna in her car, strangling her with one hand and punching her in the face with the other. Trujillo and Park pulled McClain out of the car and restrained him. Allainna ran into the building and called the police. She was hysterical and told Trujillo that she and McClain had had an argument the night before and she had left and stayed with a friend.

McClain also testified about the incident. Exh. 4 (ECF No. 49-4) at 53-57. He said Allainna knew he was going to meet her at her work because he needed to talk to her. McClain told Allainna that he was leaving her, and then Allainna began punching him in the face. He became enraged and punched her repeatedly in the face before he realized what he was doing and stopped himself.

The state supreme court held Trujillo's statement was properly admitted:

> McClain contends that the district court abused its discretion in admitting, over his objection, hearsay statements introduced at trial through Richard Trujillo, one of Allainna's co-workers. Specifically, he argues that Trujillo should not have been allowed to testify that Allainna told him that she had an argument with McClain.

Allainna's statement was made out of court and was offered for its truth, that is, to show that Allainna did in fact have an argument with McClain. Allainna's statement related to the fearful condition that McClain caused. Although the startling event occurred the night before Allainna made the statement, the district court could reasonably conclude she was still under the stress of the event. See Medina, 122 Nev. at 352, 143 P.3d at 475 ("The elapsed time between the event and the statement is a factor to be considered but only to aid in determining whether the declarant was under the stress of the startling event when he or she made the statement."). The statement was therefore admissible as an excited utterance, and accordingly, we conclude that the district court did not abuse its discretion in admitting Trujillo's hearsay testimony.

Exh. 116 at 5-6.

Brandy DiPietro, a friend of Allainna, testified that in July 2006 Allainna left her a voicemail that led DiPietro to drive to Allainna's house at about 3 a.m. Exh. 69 at 249-280. Allainna was shaky, her eyes were red, and she had marks on her neck. She told DiPietro that McClain had broken in and strangled her until she passed out. On the day of her death Allainna and DiPietro had talked on the phone at around 4 p.m.; Allainna had told her that she had to get off the phone in order to shower and get ready to pick up her kids from McClain's mother's house. On cross-examination DiPietro agreed that she had never witnessed McClain strike Allainna or be abusive in any manner.

The Nevada Supreme Court also held that DiPietro's hearsay testimony was properly admitted:

McClain asserts that the district court abused its discretion in admitting, over his objection, hearsay statements introduced at trial through Brandy DiPietro, a friend of Allainna. Specifically, he asserts that DiPietro should not have been permitted to testify that Allainna told her that in July 2006, McClain broke into Allainna's house, argued with her, and choked her until she passed out. He also asserts that DiPietro should not have been permitted to testify that, during a phone conversation on the day of Allainna's death, Allainna told her that she needed to get off of the phone to get ready to pick up her children.

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is not inadmissible under the hearsay rule." NRS 51.095. "The proper focus of the excited utterance inquiry is whether the declarant made the statement while under the stress of the startling event." Medina v. State, 122 Nev. 346, 352, 143 P.3d 471, 475 (2006).

Allainna told DiPietro about the July 2006 choking incident the morning after it occurred. Allainna was very upset and crying when she spoke with DiPietro.

7

Allainna's statement to DiPietro related to the startling event and was made while Allainna was under the stress of the event. Thus, although the statement was offered for its truth, that is, to show that McClain had in fact choked Allainna in July 2006, the statement was admissible under the excited utterance exception.

Next, Allainna's statement to DiPietro regarding her plan to pick up her children was admissible to show that Allainna went to McClain's mother's house in accordance with her stated intent and that she did not go there unannounced or to attack McClain, as he claims. Accordingly, we conclude that the district court did not abuse its discretion in admitting DiPietro's hearsay testimony.

Exh. 116 at 3-4.

McClain has failed to demonstrate that the Nevada Supreme Court determinations about the testimony recounted above were contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The court reasonably determined that the admission of Langford's testimony was harmless error as numerous other instances of McClain's violence toward Allainna were properly presented to the jury. The conclusion that Trujillo's and DiPietro's testimony was properly admitted pursuant to hearsay exceptions was also reasonable. Accordingly, relief on ground I(A)(1) is denied.

### ii.  Ground I(A)(2)

McClain argues that the trial court violated his Fifth and Fourteenth Amendment due process and fair trial rights when it admitted hearsay testimony from multiple witnesses that Allianna planned to pick up the children at 8 p.m. on February 17, 2008.

Shannon Allen testified that she was friends and neighbors with Allainna. Exh. 66 at 26-42. She last saw Allainna the day of her death on February 17, 2008. Allen testified that she and Allainna spent time together that day and Allainna said she was going to pick up her kids at 8 p.m. when they returned from vacation. Allainna was excited to see her kids.

The Nevada Supreme Court deemed Allen's statements admissible:

McClain contends that the district court abused its discretion in admitting, over his objection, hearsay statements introduced at trial through Shannon Allen, a friend and neighbor of Allainna. In particular, he asserts that Allen should not have been permitted to testify that before Allainna's death Allainna said that she "'was going to go pick [her children] up from [McClain's] family.'" [FN1]

8

Hearsay is generally inadmissible. NRS 51.065. Hearsay is defined as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." NRS 51.035. "A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain and bodily health, is not inadmissible under the hearsay rule." NRS 51.105(1) (emphasis added). This evidentiary principle is commonly known as the "[s]tate of mind exception." Lisle v. State, 113 Nev. 679, 691, 941 P.2d 459, 467 (1997), overruled on other grounds by Middleton v. State, 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998).

Allainna's statement was made out of court, and was offered for its truth. The statement, however, was relevant to demonstrating that she had plans to go to McClain's mother's house, and did not go there unannounced as McClain claimed. See Lisle, 113 Nev. at 691, 941 P.2d at 467 (declarant's stated intention to perform an act was admissible under NRS 51.105(1) "as direct evidence that [the declarant] did, indeed, carry out that intent"). Allen's testimony was thus admissible under NRS 51.105(1). Accordingly, we conclude that the district court did not abuse its discretion in admitting Allen's hearsay testimony.

[FN1: McClain also argues that the district court erred in not providing the jury with a limiting instruction informing the jury that this statement was only admissible for the limited purpose of showing Allainna's state of mind. McClain did not request such an instruction at trial and has failed to demonstrate plain error. See Green, 119 Nev. at 545, 80 P.3d at 95.]

Exh. 116 at 2-3.

Allainna's statements regarding her plan were admissible under the state of mind exception. McClain has not shown that the Nevada Supreme Court decision that the hearsay testimony that Allainna said she was going to his mother's house to pick up her kids was improperly admitted; was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law; or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Relief on ground I(A)(2), therefore, is denied.

### iii.   Ground I(B)

McClain asserts that the trial court violated his due process and fair trial rights when it admitted irrelevant and prejudicial hearsay testimony from psychologist Irene Zucker and marriage and family therapist Dennis Hanson.

The State called Dr. Irene Zucker who testified that she evaluated Allainna in August 2007 for the Nevada Division of Child & Family Services. Exh. 4 (ECF No. 49-4) at 166-171. Dr. Zucker

9

said the referral was to assess Allainna's propensity toward violence as well as her mental health. Zucker did not find any signs of a propensity for violence. Dr. Dennis Hanson testified that he assessed Allainna in July 2007 and referred her for victim counseling. Id. at 184-193.

The Nevada Supreme Court disagreed that admitting the testimony was error:

> McClain contends that the district court erred in admitting hearsay statements introduced at trial through two of the State's experts, Dr. Irene Zucker and Dr. Dennis Hanson. McClain argues that Dr. Zucker should not have been permitted to testify that she "did not find any signs that there was any propensity toward violence" in Allainna because, in order to reach such a conclusion, Dr. Zucker had to rely on hearsay statements made by Allainna. McClain further argues that Dr. Hanson should not have been allowed to testify that as a result of his evaluation, he concluded that Allainna should be referred to counseling "[a]s a victim."

> Because McClain did not object to the introduction of this evidence at trial, we review for plain error. See Green, 119 Nev. at 545, 80 P.3d at 95. An expert witness is permitted to rely upon hearsay statements to form the opinion presented at trial, provided those statements are the type of evidence relied upon by experts in forming opinions on the subject. NRS 50.285(2). An expert witness may not, however, be used as a mere conduit to introduce the statements of a nontestifying individual. See, e.g., McCathern v. Toyota Motor Corp., 23 P.3d 320, 327 (Or. 2001) (while experts may rely upon hearsay in forming their opinion, that "does not render otherwise inadmissible evidence admissible merely because it was the basis for the expert's opinion").

> To reach her conclusion that Allainna did not have a propensity for violence, Dr. Zucker relied upon an interview of Allainna conducted in August 2007. Although this interview contained statements that Allainna made to Dr. Zucker, the statements were not introduced at trial, and thus, Dr. Zucker's testimony did not run afoul of the hearsay rule. Moreover, Dr. Zucker was permitted to rely on hearsay statements under NRS 50.285(2) because clinical psychologists in the field rely upon such statements to form their medical opinions and diagnoses. To reach his conclusion that Allainna should be referred to victims' counseling, Dr. Hanson relied upon an evaluation of Allainna conducted in July 2007. To form his opinion, Dr. Hanson relied upon statements made by Allainna that implicated McClain, but no such statements were introduced at trial. Under NRS 50.285(2), Dr. Hanson was permitted to rely on hearsay statements made by Allainna because psychologists rely on such statements to make a diagnosis. Accordingly, we conclude that the district court did not err in admitting Dr. Zucker's and Dr. Hanson's testimony.[FN2]

> [FN2: McClain also argues that the district court erred in admitting hearsay statements introduced through Mary Langford, Allainna's grandmother, and Boyse Francis, an officer who was dispatched to a July 2006 domestic violence incident between McClain and Allainna. McClain did not object to this testimony at trial,

and has failed to demonstrate plain error. See Green, 119 Nev. at 545, 80 P.3d at 95.

In addition, McClain claims, for the first time on appeal, that admission of the various statements discussed above violated his right to confrontation. We conclude that this argument lacks merit.]

Exh. 116 at 6-7.

The testimony of the two healthcare professionals was brief and not particularly illuminating or compelling. In any event, McClain has not shown that the Nevada Supreme Court's decision that the testimony was not hearsay and admissible was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Relief on ground I(B), therefore, is denied.

### iv.  Ground I(C)

McClain contends that the trial court erred by preventing him from admitting evidence of Allaina's purported propensity for violence.

The court prevented Melody Nelson, McClain's mother, from testifying about the incident when Allainna kicked her toddler son. But McClain testified about the event. See supra III.A.

The Nevada Supreme Court concluded that Nelson should have been allowed to recount the incident but that it was harmless error because McClain testified about it:

McClain contends that his mother, Melody Nelson, should have been permitted to testify that in 2007, Allainna kicked their three year-old son into a wall. [FN9]

"Evidence of a person's character or a trait of his or her character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion . . . ." NRS 48.045(1). However, "[e]vidence of the character or a trait of character of the victim" may be offered by the accused. NRS 48.045(1)(b). As this court has explained, "evidence of specific acts showing that the victim was a violent person is admissible if a defendant seeks to establish self-defense and was aware of those acts." Daniel v. State, 119 Nev. 498, 515, 78 P.3d 890, 902 (2003). Furthermore, "when a defendant claims self-defense and knew of relevant specific acts by a victim, evidence of the acts can be presented through the defendant's own testimony, through cross-examination of a surviving victim, and through extrinsic proof." Id. at 516, 78 P.3d at 902.

At trial, McClain claimed he acted in self-defense. He also asserted that he witnessed Allainna kick their son into a wall. Thus, Nelson's testimony about the

11

incident was admissible because it would have: (1) tended to show that Allainna was violent, (2) corroborated McClain's claim that Allainna kicked their son, and (3) supported McClain's self-defense theory that he was fearful of Allainna because of her violent nature. Accordingly, we conclude that the district court abused its discretion in not permitting Nelson to testify about the incident.

Although we agree with McClain that this testimony should have been admitted, we conclude that its exclusion was harmless error. See id. at 517, 78 P.3d at 902 (indicating that the district court's improper exclusion of evidence of the victim's propensity for violence is subject to harmless error review). McClain and Maureen Waters were both permitted to provide extensive testimony about the incident. Thus, the jury learned about the incident despite the exclusion of Nelson's testimony. Moreover, the evidence of McClain's guilt was overwhelming. We are confident that Nelson's testimony would not have altered the jury's verdict. Therefore, we conclude that this error was harmless beyond a reasonable doubt.

[FN9: McClain also asserts that Nelson should have been permitted to testify that Allainna was "a stalker" and that he should have been permitted to introduce evidence that Allainna had stopped taking her bipolar medication at age 14. These arguments are meritless. See NRS 48.035(1) ("Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.").]

Exh. 116 at 14-15.

The trial court erred by not allowing Nelson to testify about when Allainna kicked her toddler. However, the jury learned of the incident from McClain. In light of the evidence that McClain had been violent towards Allainna on several earlier occasions including strangling her, Nelson's testimony about the night in question, and the physical evidence of strangulation, it cannot be said that the Nevada Supreme Court's decision that the error was harmless was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied for ground I(C).

v. Ground I(D)

McClain argues that the trial court erred by giving two jury instructions on proximate cause:

If a person unlawfully inflicts upon another person a physical injury which is a proximate cause of the latter's death, such conduct of the former constitutes an unlawful homicide even though the injury thus inflicted was not the only cause of the death, and although the person thus injured had been already enfeebled by disease, injury, physical condition or other cause and although it is probably [sic]

12

that a person in sound physical condition thus injured would not have died from the injury.

Exh. 73 at 29, Jury Instruction No. 27.

By proximate cause is meant a direct cause, that is, a cause which, by direct and natural sequence, produced the death in question. To say it differently, the proximate cause of a thing is that cause which produces it and without which it would not have happened. A proximate cause is a real cause, as opposed to a remote cause. This does not mean that the law seeks and recognizes only one proximate cause of a result, consisting of only one factor, one act, one element of circumstance, or the conduct of only one person. To the contrary, the acts and omissions of two or more persons or causes may work concurrently as the efficient cause of death, and in such a case, each of the participating acts or causes is regarded in law as a proximate cause.

Id. at 30, Jury Instruction no. 28.

McClain insists that the instructions suggested that the jury could convict him if it found his actions were a mere contributing cause of death. He argues the instructions lessened the prosecution's burden of proof.

A jury instruction must infect the entire trial with unfairness in order to establish a violation of due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991); Henderson v. Kibbe, 431 U.S. 145, 154 (1977). The challenged instruction must violate some due process right protected by the Fourteenth Amendment. Cupp v. Naughten, 414 U.S. 141, 147 (1973). Demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment requires the court to determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not whether the instruction is "undesirable, erroneous, or even universally condemned." Henderson, 431 U.S. 145, 154 (1977) (citations omitted); Estelle, 502 U.S. at 72. There must be a reasonable likelihood that the jury applied the instruction in a way that violated the Constitution. Id. That a juror "could have" misinterpreted an instruction is different from the reasonable likelihood that the juror did misinterpret the instruction. Tyler v. Cain, 533 U.S. 656, 658 n.1 (2001). In reviewing jury instructions, the court considers whether the instructions as a whole were misleading or inadequate to guide the jury's deliberation. United States v. Garcia-Rivera, 353 F.3d 788, 791 (9th Cir. 2003). An instruction may not be judged in isolation, "but must be considered in the context of the

instructions as a whole and the trial record." <u>Estelle</u>, 502 U.S. at 72. Jurors are presumed to follow the instructions that they are given. <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000).

In <u>Lay v. State</u>, the Nevada Supreme Court rejected a defendant's claim on appeal that the direct cause of the victim's death was negligent medical treatment and not the gunshot wound inflicted by the defendant. 886 P.2d 448 (1994). The court explained that "[a] defendant will not be relieved of criminal liability for murder when his action was a substantial factor in bringing about the death of the victim," and held that Lay was not entitled to a requested instruction on the theory that he did not proximately cause the victim's death. <u>Id.</u> at 450.

The Nevada Supreme Court concluded that the proximate cause instructions given to McClain's jury were not improper or duplicative:

> McClain contends that the district court erred in providing Jury Instruction Nos. 27 and 28 because they were duplicative and inaccurately described proximate cause. [FN10]
>
> The district court's decision regarding jury instructions is reviewed for an abuse of discretion. <u>Crawford v. State</u>, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). This court has explained that "a criminal defendant can only be exculpated where, due to a superseding cause, he was in no way the 'proximate cause' of the result." <u>Etcheverry v. State</u>, 107 Nev. 782, 785, 821 P.2d 350, 351 (1991). "[A]n intervening cause must be a superseding cause, or the sole cause of the injury in order to completely excuse the prior act." <u>Id.</u> Furthermore, "[a] defendant will not be relieved of criminal liability for murder when his action was a substantial factor in bringing about the death of the victim." <u>Lay v. State</u>, 110 Nev. 1189, 1192-93, 886 P.2d 448, 450 (1994)." [FN11]
>
> …. [court sets forth jury instructions quoted above]
>
> We conclude that Jury Instruction Nos. 27 and 28 accurately distilled proximate cause and were not duplicative. <u>See</u> <u>Lay</u>, 110 Nev. at 1192-93, 886 P.2d at 450; <u>Etcheverry</u>, 107 Nev. at 785, 821 P.2d at 351; <u>see also</u> 40 C.J.S. Homicide § 9 (2006) (providing a comprehensive overview of proximate cause that is nearly identical to Jury Instruction Nos. 27 and 28). Accordingly, we conclude that the district court did not abuse its discretion in providing Jury Instruction Nos. 27 and 28.
>
> [FN10: McClain also asserts that the district court erred in providing Jury Instructions Nos. 5, 17, 19, and 41. McClain did not object to these instructions at trial, and has failed to demonstrate plain error. <u>See</u> <u>Green v. State</u>, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).]

14

[FN11: McClain argues that <u>Lay</u> has been superseded by this court's decisions in <u>Ramirez v. State</u>, 126 Nev. __, 235 P.3d 619 (2010), and <u>Labastida v. State</u>, 115 Nev. 298, 986 P.2d 443 (1999), and that under those decisions, the district court should have instructed the jury that there must be an "immediate and direct casual [sic] relationship" between his acts and Allainna's death. Contrary to McClain's argument, <u>Ramirez</u> and <u>Labastida</u> did not abrogate <u>Lay</u>, and are inapposite because they involved instructions on proximate cause for second-degree felony-murder. <u>See Ramirez</u>, 126 Nev. at __, 235 P.3d at 622; <u>Labastida</u>, 115 Nev. at 307, 986 P.2d at 448-49.]

Exh. 116 at 16-18.

McClain does not point to any authority to demonstrate that the jury instructions did not properly outline liability for murder under Nevada law. The Nevada Supreme Court's conclusion that the instructions properly stated Nevada law is binding on this court. <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005). It cannot be said that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied for ground I(D).

### vi.   Ground I(E)

McClain asserts that the trial court erred by giving three jury instructions.

In jury instruction no. 5, defining reasonable doubt, the trial court provided:

> A reasonable doubt is one based on reason. It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation.

Exh. 73 at 7.

The Due Process Clause requires the government to prove every element of a charged offense beyond a reasonable doubt. <u>See</u> <u>In re Winship</u>, 397 U.S. at 358, 364.  "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions [must] correctly convey[] the concept of reasonable doubt to the jury." <u>Victor v. Nebraska</u>, 511 U.S. 1, 5 (1994) (internal quotation marks omitted).

McClain also objected to an instruction on implied malice and a concluding instruction: in instruction no. 17 the trial court defined malice and provided that, "[m]alice may be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." Exh. 73 at 19. With instruction 41, the trial court issued the following as a concluding instruction:

> Now you will listen to the arguments of counsel who will endeavor to aid you to reach a proper verdict by refreshing in your minds the evidence and by showing the application thereof to the law; but whatever counsel may say, you will bear in mind that it is your duty to be governed in your deliberation by the evidence as you understand it and remember it to be and by the law as given you in these instructions, with the sole, fixed and steadfast purpose of doing equal and exact justice between the defendant and the State of Nevada.

Exh. 73 at 43.

The Nevada Supreme Court rejected this claim about the three instructions in a footnote, stating that McClain did not object to the instructions at trial, and he did not demonstrate plain error. Exh. 116 at 16, n.10.

First, the reasonable doubt instruction is permissible under Nevada and federal law. See e.g., Elvik v. State, 965 P.2d 281 (Nev. 1998); Bolin v. State, 960 P.2d 784 (Nev. 1998); see also Ramirez v. Hatcher, 136 F.3d 1209, 1212-14 (9th Cir. 1998) (explaining that Nevada's reasonable doubt instruction did not violate constitutional principles).

With respect to the implied malice instruction, the Supreme Court has held that instructions regarding inferences are constitutional and do not relieve the prosecution of its burden of proof. See Francis v. Franklin, 471 U.S. 307, 314 (1985). Respondents further point out that the jurors did not rely on the implied malice instruction because they convicted McClain of willful, deliberate, and premeditated murder.

Finally, with the concluding instruction, McClain has not demonstrated that the instruction rendered his trial fundamentally unfair. The jury was also instructed on reasonable doubt and the presumption of innocence. McClain has not shown that the Nevada Supreme Court's rejection of his challenges to these jury instructions was contrary to, or an unreasonable application of, clearly established federal law. Federal habeas relief is therefore denied as to ground I(E).

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.  Claims of Ineffective Assistance of Trial Counsel

Federal courts address ineffective assistance of counsel (IAC) claims under the two-part test announced in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In <u>Strickland</u>, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney "made errors so serious that he or she was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and (2) "that the deficient performance prejudiced the defense." <u>Williams</u>, 529 U.S. at 390 (quoting <u>Strickland</u>, 466 U.S. at 687)). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. <u>Id.</u> at 390-91 (citation and internal quotation marks omitted). To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> (citation and internal quotation marks omitted). A reasonable probability is "probability sufficient to undermine confidence in the outcome." <u>Id.</u> (citation and internal quotation marks omitted). Additionally, any review of the attorney's performance must be "highly deferential" and must adopt "counsel's perspective at the time" of the challenged conduct to avoid "the distorting effects of hindsight." <u>Strickland</u>, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. <u>Id.</u>

Ineffective assistance of counsel under <u>Strickland</u> requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." <u>Rompilla v. Beard</u>, 545 U.S. 374, 380 (2005) (internal quotation marks and citations omitted). When the IAC claim is based on a challenge to a guilty plea, the <u>Strickland</u> prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

If the state court has already rejected an IAC claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the <u>Strickland</u> standard. <u>See</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (quoting 28 U.S.C. § 2254(d)(1)). There is a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a highly deferential look at counsel's performance . . . through the deferential lens of § 2254(d)." Id. (citations and internal quotation marks omitted). Moreover, federal habeas review of an IAC claim is limited to the record before the state court that adjudicated the claim on the merits. See id. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id. at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S. at 123. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." Id. at 104 (citations and internal quotation marks omitted). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (internal quotation marks and citations omitted).

### a.  Grounds 2 and 3(A)

McClain argues that his trial counsel was ineffective for operating under a conflict of interest because his mother was paying his legal fees and she could have been an alternative suspect.

Vicki Greco testified at the evidentiary hearing on McClain's state postconviction habeas corpus petition that she and Marty Hart were originally co-counsel for McClain. Exh. 147 at 6-18. McClain's mother Melody Nelson was paying the legal fees. Greco said Nelson was constantly trying to micromanage the way the lawyers handled the defense. Greco and Nelson had a "huge blow-up" in the courthouse elevator, and Nelson fired Greco a couple of days later.

Marty Hart testified that neither McClain nor his mother were in favor of pursuing a defense that pointed to Nelson as an alternative suspect. Id. at 19-26. McClain testified at the evidentiary hearing that his mother was paying his legal fees and was the one who had discovered Allainna's body. Id. at 27-38. When pressed on cross-examination as to whether he knew Allainna's body was in the garage when his mom arrived, he said that he did not remember. McClain testified that he never told defense counsel that he did not want to pursue a reasonable doubt defense that might point the finger at his mother. On cross-examination he said that his first two defense counsel, Ms. Greco and Mr. Hart, discussed a defense that pointed to Nelson as the possible perpetrator with Nelson present. McClain said, "I didn't go along with it, but I didn't object to it either." Id. at 32.

Michael Schwarz, who ultimately represented McClain at trial, testified. Id. at 39-50. Schwarz felt that self defense was a viable theory. He pursued a defined, clear strategy of self defense, at McClain's direction. McClain's postconviction counsel pressed Schwarz about his treatment of Nelson during trial:

Q: And that it was – you were trying to – I want to establish that Melody had nothing to do with this?

A: Right.

Q: You said that?

A: I did.

Q.: How in the theory of self-defense does that play into something that's necessary for the jury to believe. She had nothing to do with this because my client did this out of self-defense?

A: I'm not sure what your question is.

Q: Why is that a necessary element of a defense of self-defense?

A: Well I don't know what context that statement came up, but I can tell you this. There were some problems with the timeline that was established with respect to when phone calls were made versus when cell power [sic] pings were and delays in calling the police and so on and so forth. My fear was that if anybody suspected that Melody Nelson had somehow tampered with evidence or lied about when she got there that that was going to reflect adversely on our self-defense theory. I mean, if people are tampering with evidence that really diminishes your chance to argue self-defense in good faith. And I wanted to make it clear that in my opinion Ms. – Melody Nelson had not done anything wrong.

Id. at 47.

The Nevada Supreme Court held that McClain demonstrated no conflict:

First, McClain contends that counsel labored under a conflict of interest as demonstrated by counsel's attempt to establish at trial that M. Nelson—McClain's mother and payer of his defense costs—was not involved in the victim's death. Counsel explained at the postconviction evidentiary hearing that he was trying to rebut implications that Nelson had tampered with crime scene evidence, which would have undermined the defense's self-defense theory. That McClain's initial representation had withdrawn because of Nelson's purported interference in the defense is irrelevant to whether counsel labored under a conflict of interest, especially where counsel testified that it was McClain's interests that he was representing. McClain has failed to demonstrate that counsel suffered from divided loyalties such "that an actual conflict of interest adversely affected his performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980); Clark v. State, 108 Nev. 324, 326, 831 P.2d 1374, 1376 (1992). The district court therefore did not err in denying this claim.

Exh. 182 at 2.

McClain has not demonstrated any conflict. McClain did not testify that he wanted to mount a defense that pointed to his mother as the culprit. Schwarz's rationale for not wanting the jury to think Nelson may have been involved or tampered with the scene is eminently reasonable. Accordingly, McClain fails to show that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, Strickland. See 28 U.S.C. § 2254(d). Relief on federal grounds 2 and 3(A) are denied.

**b. Ground 3(B)**

McClain argues that his counsel was ineffective for failing to investigate Nelson. The Nevada Supreme Court disagreed:

20

Second, McClain contends that counsel failed to investigate and explore the inconsistencies in Nelson's trial testimony. McClain's bare claim fails to explain how the defense investigator could have conducted a pretrial investigation into alleged inconsistencies in Nelson's trial testimony. Further, where Nelson corroborated McClain's self-defense theory and was thus one of the defense's key witnesses, McClain has failed to demonstrate that counsel was objectively unreasonable in not exploring the alleged inconsistencies in Nelson's testimony. McClain also fails to demonstrate what the result of additional investigation would have revealed, see Molina v. State, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004), or how exploration of Nelson's inconsistencies would have led to a reasonable probability of a different outcome at trial. Accordingly, McClain has not shown deficient performance or prejudice. The district court therefore did not err in denying this claim.

Exh. 182 at 2-3.

Again, Schwarz provided reasonable explanations for how he handled Nelson's testimony at trial—explanations that were consistent with his articulated trial strategy. McClain has not demonstrated that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, Strickland. See 28 U.S.C. § 2254(d). Accordingly, relief is denied on ground 3(B).

### D.  Cumulative Counsel Error

Finally, McClain contends in ground 4 that the cumulative effect of trial counsel's errors deprived him of his Fifth, Sixth and Fourteenth Amendment rights to effective assistance of counsel, due process, and a fair trial.

The Ninth Circuit Court of Appeals has held that "[t]he Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007).

The Nevada Supreme Court held that McClain failed to demonstrate any errors to cumulate:

Finally, McClain contends that the cumulative errors of trial counsel warrant relief. Even assuming that multiple deficiencies in counsel's performance may be cumulated to establish prejudice, see McConnell v. State, 125 Nev. 243, 259, 212 P.3d 307, 318 (2009), McClain has not demonstrated any deficient performance, and thus there is nothing to cumulate.

Exh. 182 at 6.

21

McClain has not shown deficiency and prejudice with respect to any of his claims of ineffective assistance of counsel. The Nevada Supreme Court's rejection of the cumulative error claim was not unreasonable. Relief on ground 4 is denied.

The petition, therefore, is denied in its entirety.

## IV.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. See 28 U.S.C. § 2253(c); Turner v. Calderon, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. Id.

Having reviewed its determinations and rulings in adjudicating McClain's petition, the court finds that none of those rulings meets the Slack standard. The court therefore declines to issue a certificate of appealability for its resolution of McClain's petition.

///

///

///

///

///

///

///

22

**V.      CONCLUSION**

**IT IS THEREFORE ORDERED** that the third-amended petition (ECF No. 48) is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court substitute Jeremy Bean for Respondent Brian Williams.

**IT IS FURTHER ORDERED** that the Clerk enter judgment accordingly and close this case.


        **DATED:** January 22, 2025



_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE

23